UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NAKITA PURVIS,<br><br>          Plaintiff,<br><br>          v.<br><br>WAL-MART STORES EAST, LP,<br><br>          Defendant. | CAUSE NO.: 1:17-CV-102-TLS |

**OPINION AND ORDER**

This litigation arises out of Plaintiff Nakita Purvis' termination from her employment with Defendant Wal-Mart Stores East, LP. The Plaintiff claims that the Defendant violated the Family and Medical Leave Act (FMLA) when it terminated her. Currently before the Court is the Defendant's Motion for Summary Judgment [ECF No. 26]. The Plaintiff responded to the Defendant's Motion [ECF No. 29], and the Defendant replied [ECF No. 31].

**FACTUAL BACKGROUND**

Two of the Defendant's policies are relevant to the present litigation. First, the Defendant's Field Attendance and Punctuality Policy (Attendance Policy) requires employees to report any absence or late arrival at least one hour before their scheduled start time. Employees may report by calling the Associate Information Line or submitting the "Report an Absence" form on the WalmartOne application. Failure to report an absence through one of these methods results in a no-call/no-show. An employee receives one "occurrence" for an unauthorized absence, and three occurrences for a no-call/no-show. Thus, if an employee was absent from a scheduled shift without timely reporting the absence, the employee would receive four

occurrences, one for the absence and three for not calling ahead. The Attendance Policy provides that, if an employee accumulated nine or more occurrences in a rolling six-month period, the employee is subject to termination. The Defendant also has an FMLA policy, which requires employees to report any FMLA needs to Sedgwick Claims Management Services, Inc., (Sedgwick), the Defendant's third-party leave of absence administrator. Sedgwick then provides the relevant documentation to the employees, and employees return it to Sedgwick.

The Plaintiff began working for the Defendant as a Pharmacy Sales Associate at the Defendant's store in Marion, Indiana, in January 2014. The Plaintiff was promoted to Pharmacy Technician that June. The Plaintiff was aware of, and subject to, the Defendant's Attendance Policy. The Plaintiff was familiar with the call-in procedure, and regularly utilized the call-in system to report her absences in accordance with the policy. The Plaintiff was also familiar with the FMLA policy. The Plaintiff requested and received FMLA leave multiple times during her employment with the Defendant.

On January 6, 2017, the Plaintiff contacted Sedgwick to request FMLA leave, covering her absences from December 28, 2016 through January 1, 2017. The Plaintiff requested that Sedgwick send the relevant documentation by postal mail. In response to her request, on the same day, January 6, 2017, Sedgwick sent the claim-related documentation to the address it had on file for the Plaintiff. However, the address was not up-to-date.

On January 24, 2017, the Plaintiff received a text message from Sedgwick, reminding her that her medical certification form had not yet been received and that it was due by January 26, 2017. The Plaintiff retrieved the package from her former address, delivered it to her healthcare provider, and asked them to complete it by the January 26, 2017 deadline. The Plaintiff did not

request an extension of the deadline from Sedgwick. The Plaintiff did follow-up with her healthcare provider several times over the next few days.

On January 26, 2017, the Plaintiff's immediate supervisor followed up on her behalf with Sedgwick, and informed the Plaintiff that Sedgwick still had not received the medical certification form. The Plaintiff asked her supervisor what she should do if her medical certification form was not received by Sedgwick by the end of the day, and he told her to leave her badge in the pharmacy when she clocked out, "just in case." *See Pl.'s Dep.*, ECF No. 28-1, p. 37. The Plaintiff did leave her badge when she left that evening.

The Plaintiff was scheduled to work on January 27, 2017. That morning, the Plaintiff contacted the personnel coordinator at her store, and asked whether her requested FMLA leave had been granted. The coordinator told the Plaintiff she was not sure. The Plaintiff asked what she should do, and whether she still had her job, and the coordinator responded that the deadline was the deadline. *See Supp. to Resp. to Mot.*, ECF No. 30-1, Ex. A, p. 21. Subsequently on January 27, 2017, the Plaintiff contacted her supervisor by text. She told him that she was not getting answers about whether her FMLA leave was granted and asked what to do. The Plaintiff's supervisor responded that he had not gotten answers either, but that he had been asked to be informed if the store received confirmation. The Plaintiff responded that she was not going to waste gas until she knew the status of her employment because she could not afford to use up all of the gas in her vehicle if she no longer had a job.

On January 28, 2017, around 9:00 or 10:00 a.m., the Plaintiff again spoke with the personnel coordinator at her store. The Plaintiff asked about the status of her job, and the coordinator told her to contact her supervisor. The Plaintiff did so, and her supervisor informed

3

her that her FMLA leave had been approved. The Plaintiff responded that she was now able to relax, having been very concerned about the situation.

The Plaintiff's supervisor next sent a message saying, "they just told me you didn't show up yesterday and didn't call in. That's four points." *See Supp. to Resp. to Mot.*, Ex. A, p. 34. The Plaintiff explained that she did not call in because she thought she was already fired, partly because she had tried to log in to the WalmartOne application and had been unsuccessful. The Plaintiff asked if the Defendant could make an exception. The Plaintiff's supervisor told her no exception could be made; and the Defendant terminated the Plaintiff's employment due to "excessive points for showing up late and absences," the last of which was a four-point occurrence "due to a no-call no show Friday 1/27." *See Supp. to Resp. to Mot.*, Ex. E.

**STANDARD OF REVIEW**

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

### A. The Plaintiff's Claim for FMLA Interference

The Plaintiff's only claim is for interference with her FMLA rights. For an FMLA interference claim, the Plaintiff must establish: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *See Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). The parties dispute only the fifth element. Specifically, the Plaintiff argues that (1) she did not receive the FMLA certification paperwork within five business days, and (2) the Defendant failed to properly communicate her rights and responsibilities to her under the FMLA.

#### 1. Notice under the FMLA

The Plaintiff alleges that she did not receive adequate notice of her FMLA entitlement. It is undisputed that Sedgwick sent the relevant paperwork to a previous residence in Fairmount, Indiana, and that the Plaintiff did not retrieve the paperwork until January 24, 2017. The Defendant and the Plaintiff dispute whether Sedgwick should have known this address was out of date. The Plaintiff argues that, as she told the Defendant about her new addresses, Sedgwick should have known the updated address. The Defendant argues that, as the Plaintiff knew from its policy that Sedgwick managed all FMLA-related requests, the Plaintiff should have known to

update Sedgwick with her new address,[1] particularly if she was only going to receive FMLA-related paperwork by postal mail.

Even assuming that the Plaintiff received the notice late, such technical violations of the FMLA regulations do not give rise to liability unless the employee was prejudiced. *See Franzen v. Ellis Corp.*, 543 F.3d 420, 462 (7th Cir. 2008) (citing *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002). In this context, "prejudice" means compensation or benefits lost "by reason of the violation," other monetary losses sustained "as a direct result of the violation," and appropriate equitable relief, including employment, reinstatement, and promotion. *See Ragsdale*, 535 at 89 (citing 29 U.S.C. § 2617(a)(1)(A)(i)(I), (II), and (B)) ("[t]he remedy is tailored to the harm suffered.").

The Plaintiff argues that she experienced uncertainty regarding her FMLA entitlement because she had submitted the medical certification after the deadline, an uncertainty she would not have experienced if she had received the paperwork on time, and that the uncertainty prejudiced her because it contributed to her absence on January 27, 2017, the absence for which she was fired. *See Pl.'s Resp.*, ECF No. 29, at p. 13 ("given the crucial role [the notice] delay played in the circumstances surrounding [the Plaintiff's] January 27, 2017 absence and the subsequent termination of her employment," she "can establish prejudice as a result of the Defendant's unlawful conduct [i.e. providing the notice late].")

The Plaintiff was terminated for accumulating too many points under the Attendance Policy, after an absence that she incurred because she did not want to drive in for her shift if she was going to lose her job, an absence that thus had no coverage under the FMLA. It is

---

[1] The Plaintiff presents evidence that she did tell Sedgwick about her new address but cannot fix the point in time at which she did so before the January 24, 2017 date on which she received the paperwork. This evidence further establishes that whether Sedgwick had or should have had her address is disputed.

6

conceivable that the Plaintiff would not have been terminated if she had received the FMLA paperwork within the allotted timeframe; however, she also would not have been terminated if she had followed the Attendance Policy, or even if she had fewer points before this incident. The Plaintiff has not presented, and the Court has not found, any support for the legal theory that the Defendant's contribution to the Plaintiff's decision not to follow the Attendance Policy, and thus her termination, is enough to constitute prejudice. In fact, in cases where a plaintiff was terminated for reasons other than FMLA-related considerations, prejudice is not found. *Cf. Armfield v. Key Plastics, LLC*, No. 1:08 CV 110, 2011 WL 3022253, *7 (N.D. Ind. July 22, 2011) ("In this case, neither party disputes that plaintiff was fired for accumulating three no call / no shows in violation of defendant's 'three strikes' policy, not because she failed to return her medical certification.") *with Patrick v. Cowen*, No. 3:14-cv-782 RLM, 2016 WL 1460333, *10 (N.D. Ind. Apr. 13, 2016) ("If the defendants' undisputed failure to respond to Mr. Patrick's letter questioning the end date of his FMLA leave caused Mr. Patrick to not return to work when the defendants thought he should, producing either an implicit resignation or termination, a reasonable jury could find that the defendants interfered with Mr. Patrick's FMLA rights."); *see also Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 946–47 (N.D. Ill. 2018) (denying summary judgment when the Plaintiff was fired for failing to return after the end of his leave, and testified that he "rushed" to get the certification, and might have altered his return date if he had had more time).

     Choosing not to appear for work because she could not afford to waste gas if she were going to lose her job may have been an understandable or even a reasonable choice by the Plaintiff. However, the choice created an absence that is not covered by the FMLA, and with her

7

own choice breaking any causal chain between the late notice and her termination, any role the Defendant played in the Plaintiff's choice is too tenuous to be called prejudice.

**2.      Failure to Communicate Rights and Responsibilities**

The Plaintiff argues that the Defendant failed to responsively answer the Plaintiff's questions about her rights and responsibilities, "by [failing to instruct] her to comply with its policies, call in to work, or show up for her scheduled shifts while the leave request was pending, opting instead to instruct her to turn in her badge and state, 'the deadline was the deadline.'" *Pl.'s Resp.*, ECF No. 29, p. 18.

First, the Plaintiff has failed to identify the Defendant's violation of the relevant regulation. *See* 29 C.F.R. § 825.300(c)(5) ("Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities *under the FMLA*.") (emphasis added). Following an employer's Attendance Policy is not a responsibility under the FMLA, and so the Defendant was not under a statutory obligation to tell the Plaintiff to come in for her shift or otherwise follow the Attendance Policy. *See Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (holding that firing an employee for failing to follow call-out procedures was not a violation of the FMLA), *accord Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 690 (7th Cir. 2010) ("Ford was well within its rights (at least for FMLA purposes) to terminate Brown's employment according to its standard leave procedures."); *see also Gilliam v. United Parcel Serv., Inc.,* 233 F.3d 969, 972 (7th Cir. 2000) ("Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans.").[2]

---

[2] These cases all arise in the 29 C.F.R. § 825.302(d) context, which states "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for

Second, even if the Plaintiff had identified a violation of the FMLA, she would have the same problem under her failure to communicate theory as she did under her delayed notice theory: her termination was caused by her own actions, rather than the Defendant's. The Defendant's actions did not interfere with the Plaintiff's rights under the FMLA, because the Plaintiff was still required to comply with the Defendant's Attendance Policy.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 26] as to the Plaintiff's claim for interference under the Family and Medical Leave Act. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on March 26, 2019.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

requesting leave." Nevertheless, the Court finds them instructive, because if an employer is permitted to require compliance with its usual policy when an employee is requesting leave, then presumably an employer is also permitted to require compliance with the policy while the employee is not suffering from a serious health condition but waiting for confirmation that previously-taken absences qualify under the FMLA. Additionally, none of the cases present an affirmative obligation that the employer must inform an employee of this requirement.